## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HACKENSACK UNIVERSITY )
MEDICAL CENTER, )
30 Prospect Avenue )
Hackensack, NJ 07601, )
)
      Plaintiff, )
)
        v. )    Civil Action No. _____
)
MICHAEL O. LEAVITT, Secretary, )
Department of Health and Human )
Services, )
200 Independence Avenue, S.W. )
Washington, D.C. 20201, )
)
      Defendant. )
)

## COMPLAINT

Plaintiff Hackensack University Medical Center, by and through its undersigned attorneys, brings this action for judicial review of a final decision of Defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and states as follows:

### Preliminary Statement

1.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.* Plaintiff Hackensack University Medical Center ("the Medical Center") seeks judicial review of the final decision of Defendant, the Secretary ("the Secretary") of the Department of Health and Human Services

("HHS"), refusing to include inpatient days related to patients enrolled in the New Jersey Charity Care Program ("NJCCP") when calculating the Medical Center's fiscal year ("FY") 2002 Medicare disproportionate share hospital ("DSH") payment.

2.      Under 42 U.S.C. §1395ww(d)(5)(F)(i)(I), the Secretary is required to make Medicare DSH payments to hospitals, such as the Medical Center, that "serve a significantly disproportionate share of low-income patients." The DSH payment is calculated based, in part, on the number of days a DSH hospital provides inpatient services to "low-income patients." Under the statute, "low-income patients" include all patients who were not entitled to Medicare but who were "eligible for medical assistance under a State Plan approved under [Title XIX of the Social Security Act ("the Act")]" when they received inpatient services.      42      U.S.C. §1395ww(d)(5)(F)(i)(II).

3.      The Secretary refused to include any inpatient days relating to NJCCP enrollees when calculating the Medical Center's FY 2002 Medicare DSH payment even though the NJCCP was explicitly approved by the Secretary under Title XIX of the Act to be part of the New Jersey Medical Assistance State Plan. The Medical Center appealed the Secretary's unlawful action.

4.      In a decision dated December 3, 2007, the Provider Reimbursement Review Board ("Board") reversed the Secretary's unlawful exclusion of all inpatient days relating to NJCCP enrollees. However, the Secretary, through his designee, the Administrator of the Centers for Medicare and Medicaid Services ("CMS"),

reversed the Board's decision. The CMS Administrator's decision is the final agency decision for purposes of judicial review.

5.    The Secretary's decision is inconsistent with the plain language and clear purpose of the DSH statute. Accordingly, the Medical Center seeks an order reversing the Secretary's decision and requiring the Secretary to recalculate the Medical Center's FY 2002 Medicare DSH payment after including inpatient days relating to non-Medicare entitled NJCCP patients.

## Jurisdiction and Venue

6.    This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision).

7.    Venue lies in this judicial district under 42 U.S.C. §405(g), 42 U.S.C. §1395oo(f), and 28 U.S.C. §1391(e) because Defendant is an officer of an agency of the United States acting in his official capacity.

## Parties

8.    Plaintiff Hackensack University Medical Center (Medicare Provider No. 31-0001) is a not-for-profit acute-care hospital that furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to Medicare benefits. It participated in the Medicare program at all times relevant to this action.

9.    Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services, the Federal department which contains CMS. The Secretary, the Federal official responsible for administering the Medicare Program, has delegated that responsibility to CMS. Before June 14, 2001, CMS was known

3

as the Health Care Financing Administration ("HCFA"). In this complaint, the agency is referred to as "CMS" or "HCFA," as appropriate, depending on the context.

## Factual Background

### A.    General Background of the Medicare Program

10.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. §1395cc, the Medical Center entered into a written agreement with the Secretary to provide hospital services to eligible individuals.

11.    Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient hospital services, such as the Medical Center, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. §1395x(v)(1)(A).

12.    In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by

4

individuals not so covered." *Id.* The Secretary has published many rules implementing the Medicare program in various manuals.

13.    Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital that participates in Medicare. Intermediaries make periodic payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. §1395h.

14.    At the close of its FY, a hospital must submit a "cost report" to its intermediary showing both the cost incurred by it during the FY and the appropriate portion of those costs to be allocated to, and paid by, Medicare. 42 C.F.R. §§413.24 and 413.50. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the cost reporting period.

15.    If a hospital is dissatisfied with its intermediary's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, the hospital may seek to have the NPR corrected or altered in one of two ways:

    a.    The hospital has a right to obtain a hearing before the Board by filing an appeal with the Board within 180 days of receiving its NPR. 42 U.S.C. §1395oo.

b.    The  hospital  may  request  reopening  of  an  intermediary's determination within three years of the date of notice to the hospital of the intermediary's determination.  42 C.F.R. §405.1885(a).

16.    Regardless whether a hospital takes any action, regulations adopted by the Secretary require an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS.  42 C.F.R. §405.1885(b).

**B.    Procedure for Administrative and Judicial Review of Board Decisions**

17.    The decision of the Board constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review Board decisions to the CMS Administrator.

18.    A hospital may obtain judicial review of a final administrative decision by filing suit within 60 days of receipt of the decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).

**C.    The Medicare Prospective Payment System and DSH Adjustment**

19.    Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse Medicare-participating hospitals, such as the Medical Center, for inpatient hospital operating costs relating to Medicare beneficiaries.  *See* 42 U.S.C. §1395ww(d).

6

20.    Under PPS, Medicare payments for hospital inpatient operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates, subject to certain payment adjustments.    42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412.    One of these payment adjustments is known as the "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

21.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to an add-on payment, known as the DSH adjustment, in addition to standard Medicare payments.    42 U.S.C. §1395ww(d)(5)(F).    Congress enacted the DSH payment in recognition of the relatively higher costs associated with providing inpatient hospital services to low-income patients.

22.    This Court has recognized that these higher costs result from the generally poorer health of low-income patients, stating:

> . . . [P]oor and unhealthy patients often need more medical assistance than patients drawn from a more affluent and healthier population. For example, if a patient were admitted for an appendectomy, but also required treatment for complications arising from malnutrition, the hospital would only be entitled to payment for the appendectomy.

*Samaritan Health Ctr. v. Heckler*, 636 F. Supp. 503, 508 (D.D.C. 1985).

23.    The DSH payment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to low-income patients, which Congress enacted to "balance the inequities which exist for hospitals that treat a

disproportionate share of low income patents." *Jewish Hospital Inc. v. Secretary of Health & Human Services,* 19 F.3d 270, 274 (6th Cir. 1994).

24.    Qualification for a DSH payment and the amount of the DSH payment depends on a hospital's "disproportionate patient percentage." 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). This percentage is computed for a given cost-reporting period based on the sum of two fractions, known as the "Medicare fraction" and the "Medicaid fraction," which are calculated based on a hospital's inpatient days. This case involves only the Medicaid fraction.

25.    Under the DSH statute Act, the Medicaid fraction is calculated as follows:

> . . . the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were *eligible for medical assistance under a State plan approved under title XIX*, but who were not entitled to benefits under part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added). The Secretary, therefore, is required to include in the numerator of the Medicaid fraction all inpatient days for patients who are not entitled to Medicare Part A but who are (a) "eligible for medical assistance," (b) "under a State Plan" that was (c) "approved under Title XIX." In general, the more inpatient days that a hospital has in the numerator, the higher will be its Medicaid fraction and, therefore, the larger its Medicare DSH payment. This action is a dispute about the number of inpatient days included in the numerator of the Medicaid fraction used to calculate the Medical Center's FY 2002 DSH payment.

26.    One of the Secretary's regulations in place during 2002 stated that the Medicaid fraction is to be determined as follows:

> The fiscal intermediary determines, for the same cost reporting period used for the first computation, the number of the hospital's patient days of service for which patients were *eligible for Medicaid* but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period.

42 C.F.R. §412.106(b)(4) (2002) (emphasis added).    The Secretary applied this regulation to exclude all inpatient days relating to NJCCP enrollees from the calculation of the DSH payment for New Jersey hospitals in 2002, including the Medical Center, even though the NJCCP is part of the New Jersey Medical Assistance State Plan that was approved by the Secretary under Title XIX of the Act.    This restrictive interpretation and application of the regulation is inconsistent with the DSH statute and is, therefore, invalid.

**D.    The Medicaid Program**

27.    Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.*, which is entitled "Grants to States for Medical Assistance Programs" ("the Medical Assistance Act"), contains the statutory authority for the jointly-funded Federal and State programs that comprise "Medical Assistance."    CMS administers the Medical Assistance Programs at the Federal level.    The payments from the Federal government are based on a specified percentage of the State's payments (the "Federal matching assistance percentage" or "FMAP") and are commonly referred at as "Federal financial participation" or "FFP."    42 U.S.C. §1396d(b).

9

28.    Each State designs and administers its own Medical Assistance Programs within a broad legal framework established by Federal law.  Federal law requires each State to (a) prepare a "Medicaid State plan" that defines how the State will operate its Title XIX programs and (b) submit the Plan to CMS for approval.  42 U.S.C. §1396a.  CMS regulations describe a Medicaid State Plan as "a comprehensive written statement submitted by the [state Medicaid] agency describing the nature and scope of its Medicaid program."  42 C.F.R. §430.10.  The Secretary's regulations define "Medicaid" in 42 C.F.R. §400.200 as "*medical assistance* provided under a State plan approved under title XIX of the [Social Security] Act" (emphasis added).    In New Jersey, the Department of Human Services, Division of Medical Assistance and Health Services administers the New Jersey Title XIX program in accordance with the CMS-approved New Jersey Medical Assistance State Plan.

29.    Federal law requires that each State Plan provide Medical Assistance coverage for certain statutorily-enumerated services to individuals who are both low-income and either aged, blind, disabled, pregnant, or members of families with dependent children.    42 U.S.C. §1396a(a)(10)(A)(i).    Beyond this category of mandatory coverage, states have considerable latitude to decide which individuals will be eligible for Medical Assistance and what services will be covered.  42 U.S.C. §1396a(a)(10)(A)(ii).  In general, a state is allowed to provide optional Medical Assistance to certain "categorically needy" individuals who are ineligible for mandatory benefits, and to certain "medically needy" individuals who would be

eligible for mandatory benefits except that their income and resource levels are slightly above the maximum allowable limits for mandatory benefits. 42 U.S.C. §1396a(a)(10)(A)(ii).

30.    As a further requirement under the Medical Assistance Act, states must make additional Title XIX Medical Assistance payments to hospitals that serve a disproportionate number of low-income patients. 42 U.S.C. §1396r-4. The Medical Assistance Act requires Medical Assistance State Plans to take into account the unique circumstances of these so-called "Medicaid DSH hospitals" (*see* 42 U.S.C. §§1396a(a)(13)(A)(iv)) when making these Medicaid DSH payments and to address how the state will:

> [I]dentify and . . .make payments to disproportionate share hospitals, including children's hospitals, on the basis of the proportion of low-income and Medicaid patients (including such patients who receive benefits through a managed care entity) served by such hospitals.

42 U.S.C. §1396r-4(a)(2)(D). This Medicaid DSH payment is different from, and in addition to, the Medicare DSH payment discussed herein. Once a State Plan has been approved by CMS, the state is eligible to receive FFP based on its FMAP for the Medicaid DSH payments it makes to hospitals, like the Medical Center, that qualify for such payments.

31.    In a July 2006 report, the HHS Office of the Inspector General described the Medicaid DSH program generally and in the context of the New Jersey State Medical Assistance State Plan:

States have considerable flexibility in defining their DSH programs under sections 1923(a) and (b) of the Act. The Federal Government pays its share of Medicaid DSH expenditures according to a formula shown in section 1905(b) of the Act. In New Jersey, the Federal Government and the State contribute 50 percent each.

*Review of Medicaid Disproportionate Share Hospital Payments to University Hospital, University of Medicine and Dentistry of New Jersey: July 1, 1995, Through June 30, 2001*, Report number: A-02-04-0 1 004 (July 5, 2006) at 11. Accordingly, there is no question that the Federal government pays FFP for the New Jersey Medicaid DSH program which, as explained below, includes the NJCCP.

### E.   The New Jersey Charity Care Program

32.   The Medicaid DSH program in New Jersey is set forth at §4.19A of the New Jersey Medicare Assistance State Plan and includes a detailed description of the NJCCP. It was conceded below that the NJCCP, therefore, is part of the New Jersey Medical Assistance State Plan and that this Plan was approved by the Secretary under Title XIX of the Act.

33.   Patients who qualify for the NJCCP either receive hospital services without charge or pay a reduced amount based on a sliding scale depending on income level. N.J. Admin. Code §§10:52-11.3 and 11.8(c). Hospitals in New Jersey must inform all patients about the availability of the NJCCP (and all other forms of Medical Assistance) and assess the income and asset eligibility criteria of patients who apply for Medical Assistance benefits. N.J. Admin. Code §10:52-11.5.

34. From the perspective of the patient, the NJCCP is essentially functionally indistinguishable from the operation of the mandatory and optional Medical Assistance coverage available under Title XIX. For example, when it is unlikely that a patient will be able to pay for hospital care, each New Jersey hospital is required to make "an initial determination of eligibility for *any medical assistance programs available*. The hospital shall refer the applicant to *the appropriate medical assistance program*," which includes NJCCP. N.J. Admin. Code §10:52-11.5(d) (emphasis added). Thus, patients who are eligible for any type of Medical Assistance in New Jersey, including the NJCCP, go through the same screening process at New Jersey hospitals.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

### A.    The Medical Center's FY 2002 DSH Payment

35. When calculating the Medical Center's FY 2002 DSH payment, the Medical Center's Medicare fiscal intermediary ("the Intermediary") excluded from the Medicaid fraction all inpatient days relating to NJCCP patients. The exclusion of these NJCCP days unlawfully reduced the Medical Center's FY 2002 DSH payment by more than $3 million.

### B.    The Proceedings Below

36. The Medical Center timely appealed its DSH payment to the Board and a hearing on this appeal was held on March 9, 2007. At the hearing, the Intermediary conceded that the NJCCP was part of the New Jersey Medical

Assistance State Plan that was approved by the Secretary under Title XIX of the Act.

37.    In a decision dated December 3, 2007, the Board reversed the Intermediary's DSH payment calculation, concluding that the "Intermediary's adjustment improperly excluded New Jersey NJCCP program patient days from the Provider's DSH calculation." *Hackensack University Medical Center v. Blue Cross Blue Shield Assoc.*, PRRB Dec. No. 2008-D11 (December 3, 2007), at 7.

38.    In a decision apparently signed on January 31, 2008 and mailed to the Medical Center's counsel on February 5, 2008, which was received by the Medical Center's counsel on February 6, 2008, the CMS Administrator summarized the Board's decision as follows:

> The Board found that the Medicare DSH statute was not limited to only Medicaid-eligible patients, as the Intermediary argued, but included patients who qualified for "medical assistance, under a State Plan approved under Title XIX. Therefore, since the New Jersey CCP was approved under Title XIX, and the State received payment for these claims from CMS through the Medicaid DSH payment, the Board held that the New Jersey CCP days should be included in the Medicaid proxy to determine the Provider's DSH payment.

CMS Administrator's Decision ("Adm. Dec.") at 2.

39.    Nevertheless, the Administrator's Decision reversed the Board, finding that "the days involved in this case are related to individuals that are not eligible for 'medical assistance' as that term is used under Title XIX and, thus, are not properly included" in the Medicare DSH calculation. Adm. Dec. at 13.

14

40.    The CMS Administrator's Decision is the Secretary's final decision for purposes of judicial review.  Adm. Dec. at 15.

### COUNT I

### Judicial Review under the APA and the Medicare Act (Decision is Contrary to the Law)

41.    The Medical Center hereby incorporates by reference paragraphs 1 through 40 herein.

42.    Under the Medicare statute, 42 U.S.C. §1395oo(f), the final agency decision in this action is subject to judicial review under the applicable provisions of the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

43.    The Secretary's decision in this action must be set aside because it is contrary to law, arbitrary, capricious, and unsupported by substantial evidence in the record.  The Secretary's decision that all inpatient days relating to NJCCP patients should be excluded when determining the Medical Center's FY 2002 Medicare DSH payment violates the Medicare Act because it is inconsistent with the plain meaning and clear purpose of the DSH statute, 42 U.S.C. §1395ww(d)(5)(F)(vi)(II).

44.    The DSH statute explicitly requires the Secretary to calculate the Medical Center's FY 2002 Medicare DSH payment using all inpatient days for individuals "eligible for medical assistance under a State Plan approved under Title

XIX." At the Board hearing, the Secretary's agent made a binding concession that the NJCCP was part of the New Jersey Medical Assistance State Plan that was approved by the Secretary under Title XIX of the Act.

45.    Based on the foregoing, the Medical Center asks the Court to reverse the Secretary's decision and issue an order requiring the Secretary to recalculate the Medical Center's FY 2002 Medicare DSH payment after including inpatient days relating to non-Medicare entitled NJCCP patients.

<u>COUNT II</u>

## <u>Judicial Review under the APA and the Medicare Act</u><br><u>(Decision is Unsupported by the Evidence)</u>

46.    The Medical Center hereby incorporates by reference paragraphs 1 through 45 herein.

47.    The Secretary's decision that inpatient days relating to NJCCP patients should be excluded when determining the Medical Center's FY 2002 Medicare DSH payment must be set aside because it is arbitrary, capricious, and unsupported by substantial evidence. This is because the Secretary's decision refused to include the NJCCP inpatient days in the Medical Center's FY 2002 DSH calculation despite his agent's binding concession that the NJCCP was part of the New Jersey Medical Assistance State Plan that was approved by the Secretary under Title XIX of the Act.

48.    Based on the foregoing, the Medical Center asks the Court to reverse the Secretary's decision and issue an order requiring the Secretary to recalculate

the Medical Center's FY 2002 Medicare DSH payment after including inpatient days relating to non-Medicare entitled NJCCP patients.

## COUNT III

### Judicial Review under the APA and the Medicare Act
### (Regulation Defendant Relied on is Inconsistent with the Statute)

49.    The Medical Center hereby incorporates by reference paragraphs 1 through 48 herein.

50.    The Secretary's decision in this action must be set aside as arbitrary, capricious, and otherwise contrary to law because it relies on an interpretation of a regulation, 42 C.F.R. §412.106(b)(4), and other authorities, that are contrary to the DSH statute. The DSH statute explicitly requires the Secretary to calculate the Medical Center's FY 2002 Medicare DSH payment using all inpatient days for individuals "eligible for medical assistance under a State Plan approved under Title XIX."

51.    The Secretary's interpretation of the regulation, 42 C.F.R. §412.106(b)(4), and other authorities, to exclude, from the calculation of the DSH payment for the Medical Center, all inpatient days relating to NJCCP enrollees, who are in "a State Plan approved under Title XIX," is inconsistent with the DSH statute.

52.    Based on the foregoing, the Medical Center asks the Court to reverse the Secretary's decision and issue an order requiring the Secretary to recalculate the Medical Center's FY 2002 Medicare DSH payment after including inpatient days relating to non-Medicare entitled NJCCP patients.

17

**Requested Relief**

WHEREFORE, plaintiff requests:

1.    An order setting aside the Secretary's decision and finding that the Medicare statute requires that inpatient days relating to non-Medicare entitled NJCCP patients must be included in the calculation of the Medical Center's FY 2002 Medicare DSH payment;

2.    An order requiring the Secretary to (a) recalculate the Medical Center's FY 2002 Medicare DSH payment after including all inpatient days relating to non-Medicare entitled NJCCP patients, with interest calculated under 42 U.S.C. §1395oo(f)(2), and (b) complete the recalculation and make the necessary payment to the Medical Center within 90 days of the Medical Center's submission of documentation as to the correct number of NJCCP inpatient days to be included for purposes of calculating its FY 2002 Medicare DSH payment;

3.    An order under 28 U.S.C. §2201 *et seq.*, and other authorities, declaring (a) invalid the Secretary's exclusion of all inpatient days relating to NJCCP patients from the Medical Center's FY 2002 DSH payment and (b) that the regulation, 42 C.F.R. §412.106(b)(4), and other authorities relied on in the Secretary's decision do not preclude the relief sought by the Medical Center in this action;

4.    An order that this Court will retain jurisdiction over this matter until the Secretary's recalculation and payment of the Medical Center's FY 2002 Medicare DSH payment has been completed;

18

5.   Legal fees and costs of suit incurred by plaintiff; and

6.   Such other relief as this Court may consider appropriate.

                              Respectfully submitted,


Dated:  March 31, 2008                    _____
                              Robert L. Roth, Esq. (D.C. Bar No. 441803)
                              CROWELL & MORING LLP
                              1001 Pennsylvania Avenue, N.W.
                              Washington, D.C. 20004-2595
                              Tel: (202) 624-2870
                              Fax: (202) 628-5116
                              Attorneys of Record for Plaintiff Hackensack
                                   University Medical Center

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Hackensack University Medical Center<br>30 Prospect Avenue<br>Hackensack, NJ 07601 | Michael O. Leavitt, Secretary<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   11001<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robert L. Roth, Esq.<br>Crowell & Moring LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☒ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>Prisoner Petitions<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| Personal Property<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | Property Rights<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>Federal Tax Suits<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | Other Statutes<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

This action arises under 42 U.S.C. 1395 et seq. and 5 U.S.C. 551 et seq. for declaratory and other relief relating to Medicare payment.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 31, 2008   SIGNATURE OF ATTORNEY OF RECORD  *Kalut Z. Lot*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.